### THE SOMERVILLE.

#### (Circuit Court of Appeals, Second Circuit. May 5, 1908.)

#### No. 205.

COLLISION—MOVING VESSEL AND VESSEL AT PIER—NAVIGATION IN FOG.

A ferryboat *held* solely in fault for a collision which occurred while she was on her way from her Communipaw Slip to Twenty-Third street, New York, in a dense fog, at a speed exceeding five miles an hour, by her getting out of her course and striking and sinking a car float lying at a Hoboken Pier, inside the pier lines.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Collision, §§ 213–215.

Collision rules—speed of steamers in fog, see note to The Niagara, 28 C. C. A. 532.]

Appeal from the District Court of the United States for the Southern District of New York.

On appeal from a decree entered January 7, 1907, awarding damages to the libelant, the Pennsylvania Railroad Company, for damages resulting from a collision between the ferryboat Somerville, owned by the Central Railroad Company of New Jersey, and a car float owned by the libelant. The collision occurred at 6:30 a. m., May 6, 1906. The car float was moored at the end of Pier L, Hoboken, N. J., being the outside boat of five which were lying there. Soon after the collision the car float sank. The testimony was all taken in open court.

James J. Macklin and La Roy S. Gove, for appellant.

Robinson, Biddle & Benedict (Roderick Terry, Jr., and W. S. Montgomery, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. No negligence can be attributed to the car float. She was lying motionless inside the pierhead line where she had a right to be and where it was customary for floats to lie awaiting their turn at the bridges. At about 6:15 a. m. the Somerville started from her Communipaw Slip, on the New Jersey side, destined for Twenty-Third street on the New York side, a distance of over 3 statute miles. A heavy fog was prevailing at the time making it impossible to see vessels on the river at a greater distance than 300 feet. Some of the witnesses testify that they could not see 25 feet and all agree that the fog was unusually dense. The collision occurred about 15 minutes after the Somerville had left her slip making it nec-

essary for her to travel during that period considerably over a mile. Her master says her speed was about 3 miles an hour, and this must be taken as his judgment as to the speed which it was safe to maintain in the circumstances then existing. It is manifest, however, that her speed must have been over 5 miles an hour if, as he testifies, he reached Pier L at 6:30. This we think was not moderate speed considering the density of the fog. The Somerville was also at fault for not keeping her course. After leaving her slip she steered a course E. by N. which brought her about to the middle of the river. From that point to Twenty-Third street the compass course was N. N. E. Had she taken this course and maintained it the collision would have been impossible. The statement of the pilot, that after he had starboarded and slowed down to permit the Cortlandt Street ferryboat to pass he resumed his N. N. E. course and maintained it, is obviously a mistake, as that course, irrespective of the position in the river where it was taken or resumed, would inevitably have brought the Somerville to the New York side. In order to reach the New Jersey side at Pier L it was necessary for her to steer a course N. ½ W.

We see no escape from the conclusion that the Somerville in permitting herself to deviate so far from her compass course and in proceeding at a speed of over 5 miles an hour in a dense fog, was guilty of grave fault. The Lancaster, a tug belonging to the libelant, was in the vicinity of the float, intending to pick her up, when the Somerville loomed up from the fog. It is said that the Lancaster should have given warning whistles. Being well inside the pier line we do not think she was under any obligation to sound answering signals to those that came to her from vessels hidden by the fog in the river. She heard the Somerville's whistle but she had no means of knowing which way the Somerville was headed and had a right to assume that she was not going to run down a vessel moored at one of the piers. A signal from a vessel at or near the piers, instead of relieving, might have complicated the situation.

It is unnecessary to discuss the narrow channel rule as the court has decided at the present session, in the case of The C. W. Morse, 161 Fed. 847, that the rule does not apply to a crowded harbor where it is necessary that vessels should navigate in every possible direction.

Decree affirmed with interest and costs.